# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

The Cincinnati Insurance Co.,

                Plaintiff,

v.                                   Case No. 16-cv-14342

Richfield Corporation, Inc., *et al.*,      Judith E. Levy

                Defendants.    United States District Judge

_____

General Motors LLC,             Mag. Judge Mona K. Majzoub

                Defendant/
                Counter-
                Plaintiff,

v.

The Cincinnati Insurance Co.,

                Plaintiff/
                Counter-
                Defendant.

_____

General Motors LLC,

                Defendant/
                Cross-Plaintiff,

v.

Richfield Corporation, Inc., *et al.*,

                Defendants/
                Cross-
                Defendants.

_____/

**OPINION AND ORDER GRANTING GENERAL MOTORS LLC'S
MOTION FOR SUMMARY JUDGMENT [55], GRANTING IN
PART AND DENYING IN PART THE CINCINNATI INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT [32], AND
DENYING THE RICHFIELD COMPANIES' MOTION FOR
<u>SUMMARY JUDGMENT [34]</u>**

Before the Court are three motions for summary judgment. In short, all three parties dispute the meaning of indemnification language in an insurance agreement and a purchase contract, as further described in detail below. Plaintiff The Cincinnati Insurance Company ("Cincinnati") has filed a motion for summary judgment against defendants General Motors, LLC ("GM") and Richfield Corporation, Inc., Corsair Engineering, Inc., and Transportation Technology Group, Inc. (the "Richfield Companies"). (Dkt. 32.) The Richfield Companies have filed a motion for summary judgment against Cincinnati and GM. (Dkt. 34.) Finally, GM has filed a motion for summary judgment against Cincinnati and the Richfield Companies. (Dkt. 55.) For the reasons set forth below, summary judgment is granted in favor of GM, granted in part and denied in part as to Cincinnati, and denied as to the Richfield Companies.

## I.    Background

On August 22, 2013, defendant Trask Simpson was injured by a gas cylinder explosion while working as an employee for Dort Steel Service, Inc. ("Dort Steel"). (Dkt. 1 at 3.) The cylinder was equipped on a container owned by GM and used to transport vehicle parts. (Dkt. 18 at 3.) At the time of the accident, Simpson was in the process of repairing the container consistent with a purchase contract between GM and the Richfield Companies. (the "GM–Richfield Purchase Contract"). (Dkt. 28 at 36.)

On August 8, 2016, Simpson filed suit in Michigan state court, seeking damages relating FROM the injuries he suffered in the accident (the "Underlying Simpson Case"). (Dkt. 32-5). Simpson's complaint named the Richfield Companies as defendants, alleging they were responsible for the design and manufacture of the cylinder, and that their improper actions caused his injuries. (*Id*. at 3–8.) Simpson later filed an amended complaint on December 6, 2016, adding additional defendants including GM. (Dkt. 32-4 at 2.) Simpson alleged that GM was responsible for supplying the rack in an unsafe condition. (Dkt. 32-4 at 8–9.) GM subsequently filed a cross-claim against the Richfield Companies, asserting that under the GM–Richfield Purchase Contract, the Richfield

Companies were obligated to indemnify and defend GM in the Underlying Simpson Case. (Dkt. 18 at 4.)

Cincinnati brought this action in this Court on December 14, 2016, naming the Richfield Companies and Simpson as defendants.[1] (Dkt. 1.) Cincinnati insured the Richfield Companies and sought a declaration that its commercial general liability insurance policy (the "Cincinnati Policy") did not provide indemnification or defense coverage for the Richfield Companies in connection with the Underlying Simpson Case. (*Id*. at 2–3.) Because Cincinnati was defending the Richfield Companies under a reservation of rights that included the right to seek a determination that no coverage was available, Cincinnati also sought reimbursement from the Richfield Companies for the cost of the defense. (*Id*. at 10.)

---

[1] As a threshold matter, the Court must address subject matter jurisdiction. Both Cincinnati and GM bring declaratory actions. (Dkts. 18; 28 at 33.) The Declaratory Judgment Act, 28 U.S.C. §2201, permits a court to exercise jurisdiction over a request for declaratory judgment relief, but does not confer jurisdiction on its own. *See Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014) (the act does not provide "an independent basis for federal subject matter jurisdiction."). Therefore, a federal court must also have an independent basis for subject matter jurisdiction. *See One Beacon Ins. Co. v. Chiusolo*, 295 Fed. App'x 771, 775 (6th Cir. 2008). Here, the Court has jurisdiction based on diversity of citizenship under 28 U.S.C. §1332. (Dkts. 18, 28.)

Cincinnati amended its complaint on March 27, 2017, adding GM as a defendant and seeking a further declaration that it does not owe a duty to defend or indemnify GM in the Underlying Simpson Case. (Dkt. 18.) In response, GM filed a counter-claim against Cincinnati, arguing that it qualifies as an "Automatic Additional Insured" under the terms of the Cincinnati Policy. (Dkt. 28 at 31–32.) Additionally, GM filed a cross-claim against the Richfield Companies, identical to the one it filed in the Underlying Simpson Case. GM's cross-claim asserts that the Richfield Companies are obligated to indemnify and defend GM under the express terms of the GM–Richfield Purchase Contract, or alternatively, under a theory of implied contractual indemnification. (*Id*. at 37–39.)

Cincinnati moved for summary judgment, (Dkt. 32) and the Richfield Companies did the same. (Dkt. 34.) Then, after agreeing to dismiss its cross-claim in the underlying state-court action (Dkt. 62), GM also moved for summary judgment. (Dkt. 55.) After Simpson's claims against the Richfield Companies in the Underlying Simpson Case were dismissed, Cincinnati and the Richfield Companies withdrew those portions of their summary judgment motions against one another that sought a declaration regarding Cincinnati's alleged duty to defend and

indemnify the Richfield Companies in the Underlying Simpson Case. (Dkt. 76.)

The parties' claims, counter-claims, cross-claims, motions, and cross-motions for summary judgment are outlined in following chart and will be referred to as "Claim 1," "Claim 2", etc. throughout this Opinion.

| Parties | Claim Description |
|---|---|
| Cincinnati v. GM; and GM v. Cincinnati | **Claim 1**: Does GM qualify as an "Automatic Additional Insured" under the Cincinnati Policy for coverage related to indemnification and defense in the Underlying Simpson Case? If so, do any exclusions to coverage apply? (Dkts. 32, 55) |
| GM v. The Richfield Companies | **Claim 2**: Are the Richfield Companies obligated to defend and indemnify GM under the GM–Richfield Purchase Contract for the Underlying Simpson Case? (Dkt. 28 at 37-40.) |
| Cincinnati v. The Richfield Companies | **Claim 3**: Does the Cincinnati Policy provide coverage for defense and indemnification for GM's cross-claim against the Richfield Companies for breach of contract? (Dkt. 32.) |
| Cincinnati v. The Richfield Companies | **Claim 4**: Does the Cincinnati Policy provide coverage to the Richfield Companies for the Underlying Simpson Case? (Dkt. 18 at 4–12, 16–17.) This claim, and its resultant cross-motions for summary judgment, have been withdrawn by stipulation of the parties. (Dkt. 76.) |

For the reasons set forth below, as to Claim 1, GM's motion for summary judgment is granted, and Cincinnati's motion for summary judgment is denied. As to Claim 2, GM's motion for summary judgment

is granted and the Richfield Companies' motion for summary judgment is denied. As to Claim 3, Cincinnati's motion for summary judgment is granted. As discussed, the parties withdrew Claim 4 BY stipulation (Dkt. 76).

## II.    Legal Standard for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

The parties present the court with conflicting issues of contractual interpretation in their motions. If they had presented disputed issues of contractual intent, such issues could survive summary judgment on the basis that they are questions of fact, but "disputed issues of contractual

interpretation can be resolved at summary judgment on the basis that they are questions of law." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 595 (6th Cir. 2001). Further, "genuine issues of material fact do not exist simply because opposing litigants argue for different interpretations of the same contractual provision." *Id.* at 594–595 (citing *Tenn. Consol. Coal Co. v. United Mine Workers of Am.*, 416 F.2d 1192, 1199 (6th Cir.1969)).

The parties do not dispute that Michigan law applies. The purpose of contractual interpretation is to "determine and enforce the parties intent on the basis of the plain language of the contract itself." *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 823 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 543–44 (6th Cir. 2007) (internal citations, emphasis, and brackets omitted)). If the contract language is unambiguous, then the Court must enforce the contract "as written." *Id.* Ambiguity of meaning can create a question of fact, and the Court cannot "impose an ambiguity on clear contract language." *Id.* When analyzing the scope of insurance policy coverage, the traditional principles of contract and insurance law

apply. *Radenbaugh v. Farm Bureau Gen. Ins. Co.*, 240 Mich. App. 134, 138 (2000).

## III. Analysis

### A. Claim 1: Does the Cincinnati Policy provide coverage to GM for the Underlying Simpson Case?

In Claim 1, GM argues that it is covered by the terms of the Cincinnati Policy as an "Automatic Additional Insured," meaning Cincinnati owes it a duty to indemnify and defend GM for the Underlying Simpson Case, and that no policy exemptions apply. (Dkt. 28 at 31–34.) Cincinnati argues the opposite: that GM is not an "Automatic Additional Insured" and that multiple exemptions to coverage apply. (Dkt. 18 at 9, 12–13.)

A court tasked with determining whether an insurance policy provides coverage "must first consider whether coverage exists and then whether an exclusion precludes coverage." *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 668 (1989). "It is the insured's burden to establish that his claim falls within the terms of the policy." *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 172 (Mich. 1995). However, it is the insurer's burden to establish that exemptions apply. *See Arco Indus. Corp. v. Am.*

*Motorists Ins. Co.*, 448 Mich. 395, 424–425 (1995) (Boyle, J., concurring). For the reasons set forth below, GM's motion for summary judgment on Claim 1 is granted and Cincinnati's motion for summary judgment on this claim is denied.

## 1. Is GM Covered by the Cincinnati Policy as an Automatic Additional Insured?

All parties agree that GM is not expressly named as an insured in the Cincinnati Policy. (See Dkt. 32 at 21.) Therefore, the only way that GM could qualify for coverage for the Underlying Simpson Case is if it is an Automatic Additional Insured. Automatic additional insured endorsements in insurance contracts generally eliminate the need to list each person or organization as an insured. *See* Craig F. Stanovich, *Additional Insured Status- Automatic or Wet Blanket?*, TSWW01 A.L.I.-C.L.E. 29 (2015). To qualify as an Automatic Additional Insured, GM must meet the following requirements:

> (1) Any person or organization described in Paragraph 8.a.(2) below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:
>> (a) A written contract or agreement;
>> . . .
> is an insured, provided:
>> (a) The written or oral contract or agreement is:

> 1) Currently in effect or becomes effective during the policy period; and
>
> 2) Executed prior to an "occurrence"[2] or offense to which this insurance would apply; and
>
> (b) They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage part.

Paragraph 8.a.(2) states:

> (2) Only the following persons or organizations are additional insureds under this endorsement, . . .:
>
> . . .
>
> (c) Any person or organization (referred to below as a vendor) with whom you have agreed per Paragraph 8.a.(1) above to provide insurance, but only with respect to "bodily injury"[3] or "property damage" arising out of

---

[2] Cincinnati argues that the Underlying Simpson Case does not constitute an "occurrence." (Dkt. 63 at 10–11.) "Occurrence" is defined in the Cincinnati Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 18 at 59.) Yet, Cincinnati's argument in this regard is premised on an argument made by Mr. Simpson in the Underlying Simpson Case, where Mr. Simpson argued that GM had knowledge of an actual defect. (Dkt. 70 at 10.) Later, however, Mr. Simpson did not pursue these allegations. This means Cincinnati's entire argument relies on the unpursued and unproven legal allegations made by another party in a separate matter. Cincinnati does not offer any material facts in support of its claim that the Underlying Simpson Case does not qualify as an "occurrence." As a consequence, the Underlying Simpson Case qualifies as an "occurrence."

[3] Under the Cincinnati Policy, "[b]odily injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The parties do not dispute that Mr. Simpson's injury falls under the plain meaning of this "bodily injury" definition.

"your products" which are distributed or sold in the
regular course of the vendor's[4] business . . .

(Dkt. 18 at 76–77.)

As a result of the contractual provisions, the requirements for GM
to qualify as an Automatic Additional Insured under the Cincinnati
Policy are as follows: (a) that there be a written contract requiring GM to
be added to the Cincinnati Policy for bodily injury or property damage;
(b) that the written contract was effective and executed before the
relevant occurrence; (c) that the relevant occurrence arises out of GM's
product; and (d) that GM's product be "distributed or sold in the regular
course of [GM's] business." *Id*.

Before addressing the requirements substantively, as an initial
matter, the Cincinnati Policy defines "your product[s]" as:

---

[4] Cincinnati argues that the term "vendor" is not defined in the Cincinnati
Policy. Cincinnati urges the Court to adopt the definition of "vendor" from the GM–
Richfield Purchase Agreement, but provides no basis for doing so. (Dkt. 32 at 22–23.)
On the contrary, "vendor" is defined in the Policy, as it is an interjection of a brief
explanation related to the surrounding text, "[a]ny person or organization." See
Chicago Manual of Style §§ 5.2221, 6.95–6.96 (17th ed. 2017),
https://www.chicagomanualofstyle.org/home.html. Accordingly, "vendor" refers to
GM. If Cincinnati wanted to define "vendor" in its insurance policy differently, it
could have done so.

(1) Any goods or products, other than real property, manufactured, sold, handled,[5] distributed or disposed by:

> (a) You
> (b) Others trading under your name; or
> (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

(Dkt. 18 at 60.) The terms "you" and "yours" refer to the Richfield Defendants. (*Id.*) It is undisputed that the container Mr. Simpson was repairing when he became injured was owned by GM and supplied to the Richfield Companies for transporting parts from their source of origin to assembly locations in the supply chain. (Dkt. 18 at 125.) Accordingly, this undisputed fact qualifies the container as a "product" under the definition's plain language.

---

[5] The term "handled" is not defined in the Cincinnati Policy, and is therefore interpreted according to its plain and ordinary meaning. *See Holland v. Trinity Health Care Corp.,* 287 Mich. App. 524, 527–528 (2010). In determining the plain and ordinary meaning of an undefined term, a dictionary may be consulted. *Id.* "Handle" means "to touch, feel, hold, take up, move, or otherwise affect with the hand: use the hands upon;" or "to manage with the hands." Merriam-Webster Unabridged Dictionary (2019) http://unabridged.merriam-webster.com/. Mr. Simpson's activities with GM's container falls under the plain definition of "handled."

Under the first requirement for qualifying as an automatic additional insured, the GM–Richfield Purchase Contract is a written contract requiring the Richfield Companies to include GM as an additional insured for bodily injury under the Cincinnati Policy. The GM–Richfield Purchase Contract states:

> INSURANCE:
>
> [The Richfield Companies] shall maintain insurance coverage with carriers acceptable to [GM] and in the amounts set forth in the Special Terms. [The Richfield Companies] shall furnish to [GM] either a certificate showing compliance with these insurance requirements or certified copies of all insurance policies within 10 days of [GM]'s written request. The certificate will provide that [the Richfield Companies] will receive 30 days' prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. [the Richfield Companies'] furnishing of certificates of insurance or purchase of insurance shall not release [the Richfield Companies] of its obligations or liabilities under this contract.

(Dkt. 51-1 at 1523 (sealed).) An addendum to the GM–Richfield Purchase Agreement states further:

> FOR PURPOSES OF THIS AGREEMENT, THE INSURANCE COVERAGE REQUIRED UNDER PARAGRAPH 17 ("INSURANCE") OF THE GENERAL TERMS AND CONDITIONS ARE AS FOLLOWS . . . (C) COMMERCIAL GENERAL LIABILITY COVERING LIABILITY ARISING FROM PREMISES,

14

OPERATIONS, INDEPENDENT CONTRACTORS, PRODUCTS/ COMPLETED OPERATIONS, PERSONAL INJURY . . . GM IS TO BE NAMED AN ADDITIONAL INSURED ON THE CGL[6] AND AUTO POLICIES. (3X)

(Dkt. 32-10 at 29–30.) (emphasis in original).

Cincinnati argues that this contract "doesn't specify the scope of the additional-insured coverage or the particular endorsement [the Richfield Companies were] required to purchase." (Dkt. 32 at 21.) However, the plain language of the Cincinnati Policy states that there must be a contract requiring bodily injury and property damage coverage and says nothing regarding scope or particularity of the endorsement. Additionally, both of the parties to the GM–Richfield Purchase Agreement agree that GM should be an automatic additional insured under the Cincinnati Policy. Therefore, GM meets this first requirement.

Second the GM–Richfield Purchase Contract was executed and effective before August 22, 2013, the date of Mr. Simpson's injury. The GM–Richfield Purchase Contract is dated April 1, 2013, and the addendum is dated March 29, 2016. Cincinnati argues that the

---

[6] "CGL" stands for the Cincinnati General Liability insurance policy, which is the Cincinnati Policy.

addendum which post-dates the August 22, 2013 injury, changed the underlying GM–Richfield Purchase Agreement. But by its terms, the addendum relates back to the date of the initial agreement. (Dkt. 32-10 at 3.) ("Effective Date: 01-April-2013.") GM cites to deposition testimony and written discovery response from the Richfield Companies, which state that the Richfield Companies knew of their obligation to provide insurance to General Motors. (Dkt. 70.) This fact is undisputed; Cincinnati offers nothing to contradict it. Accordingly, the written contract was effective and executed before Mr. Simpson's injury, satisfying the second requirement for GM to qualify as an Automatic Additional Insured under the Cincinnati Policy.

Third, Mr. Simpson's injury must "arise out of" the use of the container. The parties do not dispute that Mr. Simpson's bodily injury was caused by or "arose" from the container. Accordingly, the third requirement for GM to qualify as an Automatic Additional Insured under the Cincinnati Policy is met.

This leaves the requirement that the container be "distributed or sold in the regular course of [GM's] business." (Dkt. 18 at 76.) Cincinnati argues that GM's business is limited to "distribut[ing] automotive

products to car dealerships," and "sell[ing] cars and trucks," and not containers. (Dkt. 32 at 23.) GM counters, arguing that "in the regular course of GM's business, it distributes containers identical to the one that injured Trask Simpson." (Dkt. 55 at 29–30.) The term "distributed" is not defined in the Cincinnati Policy, so the Court turns to a dictionary for the plain meaning. *See Holland,* 287 Mich. App. at 527–528. "Distribute" means, "to divide among several or many (apportion); to give out or deliver especially to members of a group." Merriam-Webster Unabridged Dictionary. GM's placement of containers with the Richfield Companies falls under the plain meaning of "distributed."

The Court could not locate any Michigan cases interpreting the meaning of "in the regular course of its business" or a similar phrase in the context of a business or insurance contract.[7] However, *Atlantic Mutual Companies v. Home Depot U.S.A., Inc.*, No. 02-2241, 2003 U.S.

---

[7] The only Eastern District of Michigan case analyzing this same language in an insurance contract is *Senior Home Health Care, Inc. v. Sunrise Medical HHG, Inc.*, No. 08-10064, 2008 U.S. Dist. LEXIS 59156 (E.D. Mich., Aug. 5, 2008) (Edmunds, J.). But it is inapplicable because, in that case, the parties did not dispute this particular clause, but rather mainly disputed the meaning of "arising out of," which is not at issue here.

Dist. LEXIS 1149 (D. Kan. Jan. 27, 2003) is instructive, as it interprets the very same contractual language.

In *Atlantic Mutual*, an insurance dispute arose after a customer was injured while opening a storm door on display at Home Depot. *Id*. at *7–8. Home Depot sought defense and indemnity coverage from Atlantic Mutual arising out of the customer's lawsuit. Arguing over an identical provision as we have here, Atlantic Mutual conceded that Home Depot "sold or distributed" storm doors "in the regular course of business." However, it argued that since the specific door that caused the customer's injury was on display and not for sale, an injury caused by the item falls outside of what Home Depot "distributed or sold in the regular course of business." *Id*. at *20–21.

The district court disagreed with Atlantic Mutual, finding that even though a customer would not be able to purchase the specific display door that caused the injury, this fact alone "did not divest the door of its membership in the universe of . . . doors distributed or sold in the regular course of Home Depot's business." *Id*. at *22–24. Moreover, the court held that if Atlantic Mutual did not intend to cover display products, "it could have excluded all 'demonstration operations' including those performed

at the vendor's premises in connection with the sale of the product." *Id*. Accordingly, the court held that Home Depot's display doors are distributed or sold in the ordinary course of business. *Id*. In other words, it did not matter to the court that a consumer shopping at Home Depot would not be able to purchase the display door, since displaying such doors is part of Home Depot's business.

Here, although GM does not sell containers to the general public, as it does its cars and trucks, it distributes containers as part of the regular course of its business. The fact that a container from its manufacturing process cannot be sold to a consumer does not divest the container of being a regular and even necessary part of GM's business of selling vehicles to consumers. It does not matter that the actual "product" is not a vehicle, the container and the role it plays in GM's business makes it a regular part of GM's business because this is something that it regularly does. Accordingly, GM meets the fourth and final requirement to qualify as an Automatic Additional Insured.

## 2. Exclusions

Although GM qualifies as an Automatic Additional Insured under the Cincinnati Policy, the next inquiry is whether Cincinnati has met its

burden of showing that any exclusions to coverage apply. Although exclusionary clauses are strictly construed in favor of the insured, "[c]lear and specific exclusions must be given effect." *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992).

Cincinnati argues that the following exclusions to coverage in the Cincinnati Policy apply to GM: (a) contractual liability exclusion; (b) expected/intended injury exclusion; (c) workers compensation exclusion; and (d) employers liability exclusion. (Dkt. 18 at 5–7.) Each will be analyzed in turn.

### a. Contractual Liability Exclusion

The "Contractual Liability" exclusion in the Cincinnati Policy excludes coverage for "[b]odily injury . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Dkt. 18 at 42.) But there is an exception to this exclusion when the liability for damages is "assumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury'. . . occurs subsequent to the execution of the contract or agreement." (*Id*.)

GM argues that the GM–Richfield Purchase Contract is an "insured contract," which excepts GM from the contractual liability exclusion.

20

(Dkt. 55 at 19–24.) Determining whether the GM–Richfield Purchase Contract constitutes an "insured contract" under the Cincinnati Policy is guided by Michigan contract and insurance law. *See Northern Insurance Company of New York v. Target Corp.*, 202 F. Supp. 3d 764 at 770 (E.D. Mich. 2016) (citing *Rory v. Continental Ins. Co.*, 473 Mich. 457, 461 (2005)).

An "insured contract" is defined in the Cincinnati Policy in relevant part, as:

> That part of any other contract or agreement pertaining to your business . . .under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Dkt. 18 at 58.)

To summarize, there are two elements for qualifying as an "insured contract" under this definition: (1) that GM be a party to an agreement with another party; and (2) that the other party to the agreement assume GM's tort liability.

As to the first element, GM is a party to the GM–Richfield Purchase Contract. As to the second element—that the Richfield Companies

assume GM's tort liability—the GM–Richfield Purchase Contract states, in relevant part:

> INDEMNIFICATION:
> If [the Richfield Companies] perform[] any work on [GM]'s premises or utilizes the property of [GM], whether on or off [GM]'s premises, [the Richfield Companies] shall indemnify and hold [GM] harmless from and against any liability, claims, demands or expenses (including attorney's and other professional fees) for damages to the property of or injuries (including death) to [GM], its employees or any other person arising from or in connection with [the Richfield Companies'] performance of work or use of [GM]'s property, except for such liability claim, or demand arising out of the sole negligence of [GM].

(Dkt. 51-1 at 24–25; 51 at 10 (sealed).)

GM argues that this provision can be distilled into four pertinent elements: if the Richfield Companies (1) utilized the property of GM; they must (2) indemnify GM; (3) for injury to any person; (4) in connection with that use.[8] (Dkt. 55 at 21–22.) According to GM, this provision should

_____

[8] When opposing Cincinnati's motion for summary judgment as to Claim 4, the Richfield Companies take the position that they intended this provision of the GM–Richfield Purchase Contract to be an insured contract, in other words, a contract requiring the Richfield Companies to indemnify GM. (Dkts. 55 at 20; 34 at 8–9.) However, in opposing GM's motion for summary judgment as to Claim 4, they argue in the alternative that GM is not entitled to contractual indemnification under this provision. (Dkt. 64 at 18.) Despite Cincinnati's urging, however, the doctrine of

be interpreted broadly. In its view, the term "utilizes" means to "'make practical and effective use of something.'" (Dkt. 55 at 22 (citing The Oxford English Dictionary (3d ed. 2008)).)[9] This encompasses Mr. Simpson's repair of its racks. (Dkt. 55 at 22–23.) Similarly, the term "use" means to "'take, hold, or employ (something) as a means of accomplishing or achieving a purpose.'" (Dkt. 55 at 23–24) (citing The Oxford English Dictionary (3d ed. 2008)).)[10] And again, in GM's view, Mr. Simpson's repair of its racks which led to the Underlying Simpson Case falls under this definition. (Dkt. 55 at 24.) GM argues that the Richfield Companies were obligated to indemnify it for tort liability according to this provision. This is because Mr. Simpson was using GM's racks at the time of his accident, and his injuries arose in connection with that use. (Dkt. 21–24.)

Cincinnati argues that this provision is not an express assumption of another's liability. (Dkt. 32 at 27.) Cincinnati does not provide any facts or law to support its position, and overlooks the express language of the

---

judicial estoppel need not be applied to the Richfield Companies because they argue in the alternative.

[9] The Cincinnati Policy does not define the term "utilizes," and again the dictionary is appropriate.

[10] The same is true here. Reliance on the dictionary is appropriate.

GM–Richfield Purchase Agreement. In conclusion, the plain-meaning interpretation of the GM–Richfield Purchase Contract, the above-quoted indemnification provision constitutes an insured contract. Since the GM–Richfield Purchase Contract is an insured contract the contractual liability exclusion of the Cincinnati Policy does not apply to GM.

### b. Expected or Intended Injury Exclusion

The "Expected or Intended Injury" exclusion in the Cincinnati Policy excludes coverage for "[b]odily injury . . . which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured." (Dkt. 18 at 42.) Cincinnati's argument here is premised on Mr. Simpson's abandoned and unproven allegations in the Underlying Simpson Matter GM had actual knowledge that the container was defective, which the Court as already rejected as set forth above. Accordingly, Expected/Intended Injury exclusion does not apply.

### c. Workers' Compensation Exclusion

Cincinnati next argues that GM is excluded from coverage under the "Workers' Compensation and Similar Laws" exclusion in the Cincinnati Policy. The Workers' Compensation and Similar Laws exclusion excludes coverage for:

> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

(Dkt. 18 at 42.) In response, GM argues that it was never Mr. Simpson's employer, and it follows that this provision cannot apply to GM. Cincinnati does not present an issue of material fact for the Court to consider on this point, and accordingly, the Workers' Compensation and Similar Laws exemption is inapplicable.

### d. Employer's Liability Exclusion

Finally, Cincinnati argues that the Employer's Liability exclusion to the Cincinnati Policy applies. However, the Employer's Liability Exclusion contains an exception to the exemption for liability assumed under an insured contract. Specifically, the exception to the exclusion states, "[t]his exclusion does not apply to liability assumed by the insured under an 'insured contract.'" (Dkt. 18 at 42.) As set forth above, the GM–Richfield Purchase Contract is an insured contract whereby the Richfield

Companies assumed GM's tort liability. Accordingly, the exception to the Employer's Liability Exclusion applies.

In sum, the four potential exclusions from coverage under the Cincinnati Policy— the contractual liability exclusion, the expected or intended injury exclusion, the workers' compensation exclusion, and the employer's liability exclusion—do not apply. Therefore, GM is an Automatic Additional Insured with no exclusions. Accordingly, GM's motion for summary judgment as to Claim 1 is granted, and Cincinnati's motion for summary judgment as to Claim 1 is denied.

### B.    Claim 2: GM v. The Richfield Companies

In Claim 2, GM's cross-claim against the Richfield Companies, GM argues that the Richfield Companies are obligated to indemnify GM in connection with the Underlying Simpson Case. GM pleaded two counts. First, express contractual indemnification—GM argues that the GM–Richfield Purchase Contract expressly provides for indemnification. (Dkt. 28 at 37–38.) Second, in the alternative, GM argues for implied contractual indemnification. (*Id.* at 39.) The Richfield Companies and GM filed cross-motions for summary judgment on this issue. (Dkts. 55, 34.)

As set forth in the analysis of Claim 1 above, the Court has already ruled that the GM–Richfield Purchase Contract qualifies as an insured contract whereby the Richfield Companies have expressly agreed to indemnify GM for tort liability. Because the Court finds express contractual indemnity, it need not address GM's motion on its alternative theory of implied contractual indemnity. It therefore follows that summary judgment on Claim 2 is granted as to GM and summary judgment is denied as to the Richfield Companies.[11]

### C.    Claim 3: Cincinnati v. Richfield

In its amended complaint, Cincinnati seeks a declaration that its Policy does not provide coverage to the Richfield Companies for defense and indemnification for breach of contract claims. (Dkt. 18 at 9.) In other words, it argues that the "occurrence" language in the Cincinnati Policy cannot be interpreted to include breach of contract claims such as that between GM and the Richfield Companies. In *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 582–83 (6th Cir. 2001), the Sixth Circuit

---

[11] Practically, however, if GM is covered under the Cincinnati Policy, Richfield may only owe indemnification and defense to GM for the amounts that go beyond the Cincinnati Policy's coverage limits. As the specifics of this practical effect of Claim 2 have not been fully briefed, this opinion does not address that issue.

stated, "courts have held that a breach of contract claim cannot constitute an 'occurrence' under liability policies triggered by an accident or an occurrence." Hence, the breach of contract action between GM and the Richfield Companies does not fall under definition of "occurrence" in the Cincinnati Policy. Therefore, Cincinnati's unopposed motion for summary judgment as to Claim 3 is granted.[12]

## D.    Claim 4: Remainder of Claims

As set forth above, the parties voluntarily dismissed the remainder of the claims between Cincinnati and the Richfield Companies. (Dkt. 76.)

## IV.    Conclusion

For the reasons set forth above:

- GM's motion as to Claim 1 is GRANTED;

- Cincinnati's motion as to Claim 1 is DENIED;

- GM's motion as to Claim 2 is GRANTED;

---

[12] The Richfield Companies did not cross-move against Cincinnati on this issue, nor do they even address Cincinnati's argument in their briefs. GM's briefs also do not address this issue, as GM sees this issue as between Cincinnati and the Richfield Companies only. (Dkt. 42.) When a motion for summary judgment is unopposed, "'[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record.'" *Allstate Ins. Co. v. Das*, 86 F. Supp.3d 716, 724 (E.D. Mich. 2015) (quoting *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992)).

- The Richfield Companies' Motion as to Claim 2 is DENIED; and

- Cincinnati's motion as to Claim 3 is GRANTED.

There are no remaining claims in this lawsuit.

IT IS SO ORDERED.

Dated: June 11, 2019
     Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge